**In re CONSOLIDATED EQUITY PROPERTIES, INC., a Nevada corporation, Debtor.**

**CONSOLIDATED EQUITY PROPERTIES, INC., a Nevada corporation, Appellant,**

**v.**

**SOUTHMARK CORPORATION; Hotel Continental, Inc., and Hotel Continental, Ltd.; United States Trustee; American Realty Trust, Inc.; Grimmett, Tom R., Trustee; Primerit Bank, Appellees.**

**No. CV–S–91–365–PMP (RJJ).**
**BK–S–90–3580–LBR.**

United States District Court,
D. Nevada.

July 3, 1991.

Rodney M. Jean, Lionel, Sawyer & Collins, Las Vegas, Nev., for appellant.

Donald E. Brookhyser, Jolley, Urga, Wirth & Woodbury, Las Vegas, Nev., for Hotel Continental.

Henry Simon, Simon, Anasmin, Doby, Wilson & Skillern, Ft. Worth, Tex., for American Realty.

Nile Leatham, Edwards & Koesar, Las Vegas, Nev., for Tom R. Grimmett, Trustee.

Michael D. Warner, David T. Cohen, Robinson, Diamant, Brill & Klausner, Los Angeles, Cal., Gerrit Pronske, Hale, Spencer, Stanley, Pronske & Trust, P.C., Dallas, Tex., for Hotel Continental, Inc., and Continental Hotel, Ltd.

Andras F. Babero, Las Vegas, Nev., for PriMerit Bank, Federal Sav. Bank.

## ORDER

PRO, District Judge.

This case is on appeal from the Memorandum Decision dismissing Chapter 11 case of Consolidated Equity Properties, Inc. ("CEP"), entered in United States Bankruptcy Court for the District of Nevada, BK–S–90–3580–LBR on April 19, 1991.

On May 1, 1991, CEP filed a Chapter 11 case in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Texas Bankruptcy case"), Case No. 391–33403–HCA–11. On May 22, 1991, Hotel Continental, Inc. and Continental Hotel, Ltd. (collectively, "Continental"), filed a Motion to Transfer Venue in Aid of Jurisdiction (# 11), and a Supplement thereto (# 15) on May 24, 1991. On May 30, 1991, CEP filed an Opposition to Continental's Motion (# 17), to which Continental Replied (# 19) on May 31, 1991.

On June 3, 1991, pursuant to Bankruptcy Rule 1014(b), this Court stayed the Texas Bankruptcy case pending a determination as to venue.

On June 11, 1991, Trustee for the *Novus Nevada* adversary proceeding (a related case filed with the Nevada Bankruptcy Court) in Case No. BK–S–90–1717–LBR, filed a Response to Continental's Motion to Transfer Venue (# 30). On June 12, 1991, CEP filed a Supplemental Brief in opposition to Continental's Motion (# 33). On the same date, Primerit Bank, a creditor of CEP, filed a Memorandum of Points and Authorities (# 34) regarding Continental's Motion to Transfer Venue, and on June 20, 1991, Continental filed a Supplemental Memorandum of Points and Authorities in support of its Motion (# 41).

Also before the Court is CEP's Motion to Dismiss Appeal (# 10), filed on May 17, 1991, to which Continental Responded (# 11) on May 22, 1991, and CEP Replied (# 17) on May 30, 1991.

### A. *Continental's Motion to Transfer Venue In Aid of Jurisdiction.*

In its Motion to Transfer Venue (# 11), Continental requests this Court to declare that venue over CEP's Chapter 11 filing is in Nevada. In response, CEP seeks a declaration that venue rests in Texas.

### 1. Burden of Proof.

■ The parties agree that Continental carries the burden of proving by a preponderance of the evidence that venue most appropriately lies in Nevada. *In re Man-*

*ville Forest Products Corp.,* 896 F.2d 1384, 1390 (2d Cir.1990); *In re HME Records, Inc.,* 62 B.R. 611, 613 (Bankr.M.D.Tenn. 1986); *In re Thomasson,* 60 B.R. 629, 632 (Bankr.M.D.Tenn.1986).

### 2. Propriety of Second Chapter 11 Filing.

 The most fundamental disagreement between the parties concerns whether the second Chapter 11 filing in Texas is legal. CEP asserts that the Texas filing is consistent with the Bankruptcy Code and is authorized by the Nevada Bankruptcy Court's Order Dismissing Nevada Case. CEP argues that the Nevada Case is moot and therefore the Texas Bankruptcy Court is the only proper court to hear this proceeding. Under the bankruptcy mootness rule, an appeal of a bankruptcy case is moot if a case is dismissed without a stay in effect. *In re Onouli–Kona Land Co.,* 846 F.2d 1170 (9th Cir.1988); *In re Weston,* 110 B.R. 452 (E.D.Cal.1989). Here, the Nevada Case was dismissed on April 19, 1991, dismissal to be effective May 1, 1991, at 9:00 a.m. Although CEP sought a declaration that the automatic stay continued in effect, the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") rejected its request. Order of the U.S. BAP of the Ninth Circuit, filed April 30, 1991. Thus, the automatic stay was extinguished at 9:00 a.m. May 1, 1991.

However, on May 1, 1991 before the dismissal was to become effective and the stay was to be lifted, this Court entered a temporary restraining order preventing foreclosure and further recognizing a stipulation by the parties that no foreclosure would take effect upon dismissal. Thus, despite the technical lifting of the automatic stay upon dismissal, the status quo has been preserved.

This case is, therefore, distinguished from those in which the Ninth Circuit has recognized the bankruptcy mootness rule. *See, e.g., In re Onouli–Kona Land Co.,* 846 F.2d 1170, 1172 (9th Cir.1988) (foreclosure resulted when no stay in effect on appeal); *In re Weston,* 110 B.R. 452, 457 (E.D.Cal.1989) (Bankruptcy Court entered order dismissing the case, permitting debtor's property to be sold by non-judicial foreclosure and no stay was obtained; property was sold). In those cases, the property forming substantially all of the corpus of the bankruptcy estate was foreclosed upon or otherwise disposed of upon dismissal. Thus, no corpus remained in the bankruptcy estate on appeal. The Ninth Circuit has repeatedly held that it is when an "occurrence of events ... prevent[s] an appellate court from granting effective relief" that an appeal is rendered moot. *Onouli–Kona Land Co.,* 846 F.2d at 1172, *quoting In re Algeran, Inc.,* 759 F.2d 1421, 1424 (9th Cir.1985). Where the appellate court can render effective relief, the bankruptcy mootness rule does not apply. *In re Sun Valley Ranches, Inc.,* 823 F.2d 1373, 1374–75 (9th Cir.1987) (Debtor's appeal from order lifting automatic stay to permit foreclosure sale to proceed was not rendered "moot," though the property had already been sold, where purchaser was party to appeal and held property subject to debtor's redemptive rights); *In re Worcester,* 811 F.2d 1224, 1228 (9th Cir.1987) (where debtor had right under California law to have foreclosure set aside).

Here, the corpus of the Chapter 11 proceeding remains intact. The Court is not pondering mere technicalities of law that will have no affect on the ownership of property and the respective rights of creditors and the debtor. Rather, the case retains the same vitality as that originally presented to the Nevada Bankruptcy Court. Any decision rendered by this Court is decidedly not moot. The Court accordingly holds that the bankruptcy mootness rule is inapplicable.

CEP further argues that concurrent and subsequent filings of Chapter 11 proceedings are countenanced by the Bankruptcy Code.

 The venue and transfer provision of Chapter 11, Bankruptcy Rule 1014(b), implicitly authorizes concurrent Chapter 11 filings:

If petitions commencing cases under the Code are filed in different districts by or against (1) the same debtor ... on mo-

tion filed in the district in which the first petition is filed and after hearing on notice to the petitioners and other entities as directed by the court, the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed....

Bankruptcy Rule 1014(b). It is clear from this statute that by countenancing simultaneous petitions in different districts, Congress has authorized at least some types of concurrent jurisdiction over a Chapter 11 debtor's estate.

Furthermore, CEP is correct that there is no general rule against subsequent bankruptcy filings. In *Johnson v. Home State Bank*, — U.S. —, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), the Supreme Court ruled that where Congress has explicitly declared some types of subsequent filings to be illegal, others are implicitly endorsed.[1] 111 S.Ct. at 2156, *citing United States v. Smith*, — U.S. —, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991). The parties have not pointed to any statutory directive rendering subsequent Chapter 11 filings illegal.

■ In fact, the Code generally provides that no prejudice results from dismissal which would bar a subsequent bankruptcy filing. 11 U.S.C. § 349. The general rule has a single exception: prejudice does attach when the court ordering dismissal enters a specific order for good cause shown which would bar a future filing. *Id.; Hall v. Vance*, 887 F.2d 1041, 1045 (10th Cir. 1989). Thus, this Court must determine whether the Nevada Bankruptcy Court has entered such an order.

In paragraph 4 of her Order Dismissing the Nevada Case, Bankruptcy Judge Riegle stated, "The debtor [CEP] may take any action appropriate to commence proceedings in any other forum in anticipation of dismissal." CEP argues that this language authorized it to file its new Chapter 11 petition in the Texas Bankruptcy Court.

However, CEP's argument misconstrues the rather narrow meaning conveyed by the Nevada Bankruptcy Court by taking Judge Riegle's language out of context. The Memorandum Decision Dismissing the Chapter 11 Case which accompanied the Order Dismissing Nevada Case provided that, "While it is true that [Continental] may proceed to foreclosure upon dismissal, it may face an injunction and/or receiver in state court, ..." Memorandum of Decision at 10, 11, 20–22. The meaning of "any action appropriate ... in any other forum in anticipation of dismissal" cannot justifiably be taken out of context: rather, the clear import of the Order and the Memorandum of Decision, issued together, is that CEP was free to pursue any remedy it might have in state court or federal court to the extent that diversity exists to block foreclosure of the Continental Hotel property. Bankruptcy Judge Riegle's Order cannot reasonably be interpreted to have authorized CEP to seek what amounts to a redetermination of the Nevada Bankruptcy Court's Order dismissing the petition as a bad faith filing.

The issue is further clarified by Judge Riegle's statements at a hearing in the related *Novus Nevada* proceeding at which CEP was represented and which took place before the Texas petition was filed. Judge Riegle stated, "I fully anticipated when I ... entered the order dismissing this case, that CEP would pursue its remedies in State Court or in Federal Court to the extent that diversity existed." Hearing of April 30, 1991, Transcript at 2. Nowhere does Judge Riegle state that she anticipated that CEP would seek Chapter 11 protection in another jurisdiction, or that it could choose to relitigate the merits of such a petition other than through the normal appellate channels.

■ Having clarified its view of CEP's actions as unauthorized, this Court never-

---

1. *Johnson* involved a situation where a farmer had discharged some debts under the *in personam* jurisdiction of Chapter 7. Subsequently, a bank sought to attach an existing mortgage. Before foreclosure, the farmer refiled, this time under Chapter 13. The bank argued that fore-

closure of the mortgage, as an *in rem* proceeding, was not a "claim against the debtor" under Chapter 13. The Supreme Court disagreed, holding that the "claim against the debtor" language should be broadly construed.

theless cannot hold that Judge Riegle's language clearly and unambiguously amounted to an explicit order for good cause shown to bar future filings. Judge Riegle did not set out why, or indeed if, her holding entailed a finding that CEP could never cure its bad faith. Short of such an explicit declaration, the Court cannot find that the Texas filing was contrary to law. It is in the interest of justice to have a bright-line rule regarding when parties are barred from future filings. Generally, under 11 U.S.C. sec. 349(a), and *Hall v. Vance*, 887 F.2d 1041 (10th Cir.1989), an order of dismissal should be read narrowly as barring subsequent filings only when an explicit order to that effect has been made.

This Court finds that no prejudice attached to the Order Dismissing the Nevada Case and that consequently, the Texas petition was not barred by Judge Riegle's dismissal of the Nevada Case as a bad faith filing. This holding should not be construed as a finding that the Texas filing was in good faith or that res judicata or collateral estoppel does not flow from the Nevada to the Texas case. Those issues are not properly before the Court at this time.

In conclusion, the Court finds that the appeal from Judge Riegle's Order Dismissing Nevada Case is not moot and further finds that CEP's filing of the Texas Case was not barred by the Bankruptcy Code. The two Chapter 11 filings, one on appeal and one before the Texas Bankruptcy Court, coexist.

### 3. District of Nevada Court's Power to Decide Questions of Venue.

The parties disagree whether this Court has the jurisdiction to choose either Texas or Nevada as the more appropriate venue for CEP's Chapter 11 proceeding. Bankruptcy Rule 1014(b) provides that when two Chapter 11 cases have been filed, the Court in the first-filed jurisdiction may make a determination as to venue.

CEP argues that determinations of venue are core proceedings, and, as such, must be made by a Bankruptcy Court. According to CEP, venue cannot be determined by any court sitting in an appellate capacity. Continental argues, without reaching the issue of whether determinations as to venue are core proceedings, that "this Court is vested with the jurisdiction over the entire Nevada Case and [is] therefore authorized to consider all relevant matters arising in or related to the Nevada Case," presumably including the issue of venue.

Continental is correct that, "[w]hen a proper notice of appeal has been timely filed, the general rule is that jurisdiction over any matters involved in the appeal is immediately transferred from the [trial court] to the [appellate court]." *In re Thorpe*, 655 F.2d 997, 998 (9th Cir.1981). *See also Petrol Stops Northwest v. Continental Oil Co.*, 647 F.2d 1005, 1010 (9th Cir.1981).

However, the issue before this Court is not whether the Court retains jurisdiction over issues "involved in the appeal," but whether it retains jurisdiction over those issues that are *not* presented as questions on appeal. Analysis of *In re Thorpe* will clarify the distinction.

In *Thorpe*, the trial court had entered a civil contempt order regarding an attorney who refused to answer a question, claiming attorney/client privilege. 655 F.2d at 998. The attorney had timely filed a notice of appeal of the civil contempt order. Before the Ninth Circuit decided the appeal, the trial court again asked the attorney the same question and was again refused. The court held him in criminal contempt. On appeal from the criminal contempt order, the Ninth Circuit held that the filing of a timely notice of appeal divested the trial court of jurisdiction to put the question to the attorney a second time. In so ruling, the Court declared that the criminal and civil contempt orders were so similar as to be raising the same issue, that is, the propriety of the attorney/client privilege claim, and that issue was within the sole jurisdiction of the appellate court. *Id.*

Here, Continental draws from *Thorpe* the inference that all issues involved in the case that is on appeal are properly before the appellate court. The inference is misplaced. The *Thorpe* line of cases merely

holds that the same issue cannot be presented in the trial court once that issue is on appeal.

On the other hand, the Court is not convinced that Continental is wrong in its ultimate argument: that this Court has general jurisdiction over the entire case. *Thorpe* involved an interlocutory appeal where the trial court necessarily retained jurisdiction over the rest of the case. That is not the situation here. Rather, the Nevada Bankruptcy Court has dismissed CEP's filing for bad faith. Appeal of that dismissal is properly before this Court. Therefore, if there is any court in Nevada with jurisdiction to determine venue, it is this Court.

CEP argues simply that there is no court in Nevada which can properly decide venue. The Nevada Bankruptcy Court cannot because it has dismissed the case. According to CEP, only trial courts [2] have the authority to determine venue because, it claims, venue is a core proceeding under 28 U.S.C. sec. 157(b)(2). This Court, of course, is sitting exclusively in an appellate capacity. *In re Gardner*, 455 F.Supp. 327 (N.D.Ala. 1978). The case was originally referred to the Nevada Bankruptcy Court and that reference has not been withdrawn.[3]

This Court finds that Rule 1014(b), as currently in force,[4] impliedly reserves an appellate court's right to decide questions of venue despite the general rule announced in *Gardner, infra.* The language of that statute provides not that the "trial court" or the "Bankruptcy Court" but the "the court" "in the district in which the first petition is filed" may determine venue. After recognizing that two or more Chapter 11 proceedings can be ongoing in several different districts, the Supreme Court surely considered the possibility that they

would proceed at different rates of speed and efficiency. The clear import of using the language "the court" "in the district in which the first petition is filed" is that whichever court currently has before it the first-filed Chapter 11 proceeding may decide venue. If the Supreme Court had meant to restrict determinations of venue to trial courts, it would have used language clearly calculated to convey such a message. *See In re Reddington Investments, Ltd. Partnership VIII,* 90 B.R. 429 (9th Cir. BAP 1988).

█ The Court finds that Rule 1014(b) contemplates determinations of venue to be made by whichever court in the first-filed district currently has the Chapter 11 proceeding before it. Because Nevada is clearly the first-filed jurisdiction, and because the case is now before this Court on appeal from the Nevada Bankruptcy Court, venue under Rule 1014(b) is appropriately determined by this Court.

4. The Determination of Venue.

█ In determining venue in accordance with Rule 1014(b), this Court must consider the convenience of the parties and the interests of justice. In doing so, courts commonly balance six factors:

1. proximity of creditors of every kind to the Court;

2. proximity of the debtor;

3. proximity of witnesses necessary to the administration of the estate;

4. location of the assets;

5. economic administration of the estate; and

6. necessity for ancillary administration if liquidation should result.

---

**2.** Trial courts in bankruptcy proceedings are either U.S. Bankruptcy Courts or U.S. District Courts where no reference has been made to a Bankruptcy Court (or where the reference has been withdrawn).

**3.** CEP claims that a reference cannot be withdrawn once the case is on appeal, because there is no lower court from which to withdraw it. In light of this Court's interpretation of Rule 1014(b), *supra*, it need not reach this issue.

**4.** The Court recognizes that Rule 1014(b) has been amended, the amendment to become effec-

tive on August 1, 1991. However, since the controlling statute is not the amendment (which is not yet effective), the Court does not have before it the question of whether the language of the statute as amended would change the Court's analysis. In other words, the Court does not reach the question of whether a first-filed court in which a petition is "pending" reaches an appellate court, or whether the language merely clarifies that the ability to decide venue follows transfers of the first-filed petition.

*In re Commonwealth Oil Refining Co.,* 596 F.2d 1239, 1247 (5th Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980). Of these, the fifth is the most important. *Id.*

Additionally, the Court should consider any local interests which augur in favor of retaining jurisdiction. *In re Slentz,* 94 B.R. 446, 449 (Bankr.N.D.Ohio 1988), *citing In re Thomasson,* 60 B.R. 629 (Bankr. M.D.Tenn.1986).

■ Because the determination as to venue is fact-specific, the Court will examine the case's connections with both Texas and Nevada.

In this regard, CEP argues that its principal place of business is in Texas. The two people who hold CEP's offices of Director, President, Secretary, and Treasurer live and work in Texas. CEP has contracted with National Realty Advisors ("NRA"), a Texas firm, to act as advisor for it. Rivertrails Development Associates, Inc., a land development corporation which is a wholly owned subsidiary of CEP, has its offices and principal place of business in Texas. Rivertrails owns real estate in Texas. The holder of the fourth deed of trust, First City Bank, is in Texas. ART, CEP's parent corporation and equity holder, has its principal place of business in Texas and was incorporated there.

On the other hand, there are many connections between the case and Nevada. The debtor, CEP, is a Nevada corporation. The principal asset, the Hotel property, is located in Nevada. Primerit, the first lien holder of the Hotel property, is located in Nevada. Ray Pagalia, the second lien holder, is also located here. Continental, the third lien holder, is located here, too. In addition to CEP, Novus Nevada and Hotel Continental, Inc., are all Nevada corporations. The business records and witnesses relating to the daily management of the Hotel are in Nevada.

There are currently two related cases pending before the Nevada Bankruptcy Court, *In re Novus Nevada,* BK–S–90–1717–LBR, and the consolidated adversarial proceedings, *CEP and American Realty Trust v. Continental,* BK–S–90–0205– LBR. The Nevada Bankruptcy Court is familiar with the workings of CEP and its main asset, the Hotel.

The Nevada Gaming Commission has a strong and direct interest in the administration of the property of the bankruptcy estate. Any party wishing to run the Hotel as a casino must obtain licensing in Nevada.

Faced with the facts as enumerated above, the Court concludes that Continental has met its burden of proving by a preponderance of the evidence that Nevada is the more appropriate venue. The contacts with Nevada are overwhelming: the Debtor, almost all the creditors (measured in both numbers of creditors and the amounts owed to them), and the bulk of the assets are all located in Nevada. The Nevada Bankruptcy Court has a familiarity with the facts and litigants involved in the proceedings that is unparalleled in Texas, and it would run counter to the concerns of judicial efficiency to have two judges in two different courts handling these related cases. Furthermore, while some witnesses necessary to the administration of the bankruptcy estate are located in Texas, these same people must have representatives in Nevada on a regular basis to protect their interests in the consolidated adversary proceedings and the *Novus Nevada* case. Finally, many of the witnesses necessary for reorganization are connected with the gaming industry, either as consultants or as State of Nevada employees.

In conclusion, it is both in the interests of justice and for the convenience of the parties that CEP's Chapter 11 proceeding be resolved in Nevada. The Court will accordingly order that the Texas Case be transferred to Nevada.

B. *CEP's Motion to Dismiss Appeal.*

In light of this Court's holding that venue is proper in Nevada and that the Texas Bankruptcy Case will be transferred here, the Court will stay its consideration of CEP's Motion to Dismiss Appeal (# 10) for a limited time.

**268**

## ORDER

IT IS THEREFORE ORDERED that the Motion to Transfer Venue in Aid of Jurisdiction of Continental Hotel, Inc. and Hotel Continental, Ltd. (# 11) is granted. The parties are directed to immediately take all steps necessary to effectuate this transfer.

IT IS FURTHER ORDERED that the Clerk of the Court shall forthwith provide a certified copy of this Order to the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division, for entry in Bankruptcy Case No. 391–33403–HCA–11.

IT IS FURTHER ORDERED that Appellant CEP shall have to and including July 23, 1991, within which to file a written declaration with this Court as to whether, in view of the instant Order entered by the Court, CEP wishes to continue with the prosecution of its appeal or to ask the Court to enter a ruling on CEP's Motion to Dismiss Appeal (# 10).

IT IS FURTHER ORDERED that the stay entered on May 1, 1991, by Order (# 22), and the stay declared in effect by Order (# 25) of June 3, 1991, are in full force and effect pending this Court's resolution of Appellant's Motion to Dismiss Appeal (# 10). No foreclosure action will be taken by any party pending that resolution. Appellant CEP is hereby directed to post a $227,000.00 bond with the Clerk of the Court by 4:00 p.m., Wednesday, July 24, 1991, if it wishes to proceed with its appeal.

IT IS FURTHER ORDERED that if Appellant CEP fails either to timely file its written notice of intent to proceed with its appeal or to timely post the required bond, Appellant's Motion to Dismiss Appeal (# 10) will be granted and the stay lifted.