**In re ABACUS BROADCASTING CORP., Debtor.**

**Bankruptcy No. 92–31540–C.**

United States Bankruptcy Court,
W.D. Texas,
El Paso Division.

April 30, 1993.

See also 150 B.R. 925.

William R. Davis, Jr., Stryker & Davis, San Antonio, TX, for debtor.

E.P. Bud Kirk, El Paso, TX, for David Gladwell, Chapter 7 Trustee.

### DECISION AND ORDER DENYING MOTION TO RECONSIDER ORDER TRANSFERRING VENUE

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the motion of Abacus Broadcasting Corp. to reconsider this court's bench ruling and order transferring venue of this case to the District of Utah. Upon consideration thereof, it is the ruling of the court that the motion is not well taken and should be denied.

### BACKGROUND FACTS

Abacus Broadcasting is a Texas corporation which owns radio stations in Salt Lake City and Ogden, Utah. It purchased the stations from bankruptcy estates in cases pending in Salt Lake City—Utah Broad-

casting Corp. and Sherman–Greenleigh–Sanchez Broadcasting of Utah, Inc. These cases were consolidated and are currently being administered by a chapter 7 trustee, David Gladwell. Mr. Gladwell, in essence, sold the stations to Abacus on credit, taking back a security interest and note. As such, Mr. Gladwell, as trustee, is the largest secured creditor of Abacus, to the tune of more than $7 million. After a default by Abacus, a Utah bankruptcy judge ordered that foreclosure proceedings could be instituted against Abacus. This bankruptcy followed not long after—not in Salt Lake City but in El Paso.

The principal of Abacus is one Garrett Haston, a resident of El Paso who has been involved in the broadcasting business for some time. In fact, he was the former owner of KEZB, Inc., an El Paso radio station itself in bankruptcy. Mr. Haston had sold KEZB to one Mr. Rich, who filed bankruptcy. As part of a plan, the station was sold to Heritage Broadcasting. Obligations due Mr. Rich's estate were not paid by the new purchasers. The creditor's committee (which had been the plan proponent), sued Heritage and KEZB. KEZB filed its own bankruptcy after suffering a judgment. Mr. Haston asserts a claim against KEZB for various items, including tower rental.

Abacus entered bankruptcy without the benefit of active counsel. The Utah attorney who filed the case in El Paso quickly withdrew. The debtor was still trying to find substitute counsel when Mr. Gladwell sought protection of his cash collateral.

Only after an order was entered restricting the debtor's use of cash collateral did the debtor (through Mr. Haston) find counsel to handle the case—a lawyer from San Antonio. Gladwell filed a motion to transfer venue. After an evidentiary hearing, the court ruled from the bench that venue should be transferred to Salt Lake City. The court acknowledged that venue was permissible in El Paso, but concluded that it was more appropriately placed in Salt Lake City, given that that is the location of the radio stations and their employees. The court specifically noted that, for an operation such as a radio station, it made much more sense to locate the bankruptcy in a venue where the judge presiding would more likely have active familiarity with the community and the milieu in which the station operated, for such a judge would be in a much better position to gauge the likelihood of an effective reorganization.[1] In addition, the bankruptcy judges in Salt Lake City are already specifically familiar with the players in this case, having dealt with them already in the prior cases over which Mr. Gladwell currently functions as trustee.

Abacus now seeks reconsideration of this court's decision, arguing that (1) a debtor's selection of venue is entitled to some deference,[2] (2) most of the estate's creditors, along with its principal, are located outside Utah anyway, (3) a radio station, unlike a department store, is more generic and so special contacts with the community are not as relevant, and (4) Mr. Haston already has a claim in the KEZB bankruptcy case,

1. The court specifically adverted in its oral ruling to the unfortunate outcome in the Frost Brothers bankruptcy, a case involving a well-known upscale department store native to San Antonio, with stores in Houston, Austin, and Dallas. The case was filed in the Southern District of New York. Efforts by interested parties to work out a reorganization were unsuccessful, and the department stores were liquidated, leaving empty anchor tenant space in shopping centers that took years to fill (some are still empty). The bankruptcy judge in New York City had no personal familiarity with the department store or its place in the local community, and hence no way to gauge the stores' place in the local economy (and no way to know the reputation the stores enjoyed in the community). While reorganization might have been no more assured had the cases been filed in Texas, at least the decision would have been made with all the relevant information at the judge's disposal, including information of which the local bankruptcy judge could reasonably take judicial notice.

2. Abacus cites for this proposition *In re Pinehaven Associates,* 132 B.R. 982 (Bankr.E.D.N.Y. 1991) and *In re Legend Industries, Inc.,* 49 B.R. 935 (Bankr.E.D.N.Y.1985). In the latter case, the court observed that, where transfer of venue would merely shift the inconvenience from one party to the other, or where after balancing all factors, the equities lean only slightly in favor of the movant, the debtor's choice of forum should not be disturbed.

pending in El Paso, and this claim (says Haston) belongs to Abacus.

Objections to the motion for reconsideration were filed by Mr. Gladwell and by Bechtel & Cole, the latter a Washington, D.C.-based law firm which specializes in FCC work. B & C is owed over $85,000, according to its objection.

## ANALYSIS

The case law on venue selection is relatively well-developed. This case warrants a written decision for its resolution primarily because its facts underscore a concern not often expressly addressed in these cases, namely the importance of having a judge preside over a case who is sufficiently familiar with the milieu in which the enterprise operates to be able to test with good judgment and common sense the contentions of the parties during the reorganization process. In addition, the court writes to underscore the danger of forum shopping (or, more insidiously, judge shopping) in the placement of venue in reorganization proceedings.

■ In 1979, this circuit set out the factors which ought to figure into the determination of permissive venue in a bankruptcy case. *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co., Inc. (In re Commonwealth Oil Refining Company, Inc.)*, 596 F.2d 1239, 1247 (5th Cir.1979, *cert. den.*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980). The factors include (1) the proximity to the court of the estate's creditors, assets, and the debtor, as well as the witnesses and evidence that might have to be adduced for hearings, (2) the relative economic harm to debtors and creditors if the case were transferred, (3) the economics of administering the estate, (4) the effect of a transfer on the willingness or ability of parties to participate in the case, and (5) the availability of compulsory process and the cost associated with obtaining the testimony of witnesses unwilling to testify voluntarily. CORCO has been followed by numerous other courts. *See, e.g., Hadar Leasing Int'l Co., Inc. v. D.H. Overmyer Telecasting Co., Inc. (In re Hadar Leasing Int'l Co., Inc.)*, 14 B.R. 819, 820 (S.D.N.Y.1981); *In re Boca Development Assoc.*, 18 B.R. 648, 652 (Bankr.S.D.N.Y.1982); *Baltimore Food Systems, Inc.*, 71 B.R. 795, 802 (Bankr.D.S.C.1986). In weighing these factors, most courts give the most deference to whether a transfer of venue would promote economic and efficient administration of the estate. *See In re Lakeside Utilities*, 18 B.R. 115, 118 (Bankr.D.Neb.1982); *In re Willows Ltd. Partnership*, 87 B.R. 684, 686 (Bankr.S.D.Ala.1988); *In re Pickwick Place Ltd. Partnership*, 63 B.R. 290, 291 (Bankr.N.D.Ill.1986); *In re Eleven Oak Towers, Ltd. Partnership*, 59 B.R. 626, 629 (Bankr.N.D.Ga.1985); *In re Old Delmar Corp.*, 45 B.R. 883, 884 (Bankr.S.D.N.Y.1985).

■ In this case, economic and efficient administration easily overwhelm whatever deference Abacus believes its venue decision should be accorded. The estate's employees are all in Salt Lake City, Utah. They cannot be expected to appear at a first meeting of creditors in El Paso, Texas, nor can they easily assert and defend their wage claims if claims objections are filed. They cannot easily appear in court to testify for cash collateral budgets or confirmation feasibility. At least in this court's experience with radio station bankruptcy cases,[3] employees are vitally interested in and integral to the station's reorganization. Were it necessary to convert this case to chapter 7, the U.S. Trustee would routinely appoint a panel trustee in El Paso, but the trustee would then have to administer assets in a city 1000 miles away. The largest and most active creditor in the case, Mr. Gladwell, would have to exhaust estate assets in another bankruptcy case just to appear at hearings were venue to be maintained in El Paso.[4] Mr. Haston of

---

**3.** There have been three such cases in this judge's tenure since 1988.

**4.** Mr. Haston retorts that, if the case is moved to Salt Lake City, it will be *he* who has to exhaust

resources in order to actively participate in the case. The point is certainly relevant, but then Mr. Haston volunteered for inconvenience when he made the decision to purchase a radio station so far distant from his home. Interest-

course offices in El Paso, and maintains many of the radio station's records here. He also arranged for Abacus to borrow money from a local El Paso bank. On balance, however, the facts weigh more heavily toward transfer than to retention.[5]

As earlier mentioned, the facts of this case highlight two specific features that ought not to be overlooked when venue is raised. One of these has to do with the ability of the presiding judge to evaluate the merits of the case in the milieu in which the debtor operates. The other has to do with forum shopping.

As with so many items left to the discretion of the trial judge, venue does not easily submit to hard and fast rules. Certainly there are many cases filed in venues far distant from the debtor's operations which

nonetheless succeed, some because the judge's familiarity with the environment in which operations are conducted ends up being relatively unimportant to the reorganization effort. But just as certainly, there are cases that have foundered in no small part due to the bankruptcy judge's lack of familiarity with that environment and his or her consequent inability to evaluate the enterprise's real chances for success in chapter 11. In bankruptcy, more than in most other kinds of federal proceedings, judges tend to draw on their experience to test the promises and platitudes floated up to the bench. The rules of evidence have long recognized the propriety of courts' drawing on common experience, as they recognize the propriety of "taking judicial notice" of matters within the ready and common experience of the judge presiding

---

ingly enough, the largest shareholder of Corco, Tesoro Petroleum, moved the company's corporate headquarters to San Antonio, Texas, where its own offices were located, even though the refinery itself and all its employees were located in Puerto Rico. That the facts in that case justified leaving venue in San Antonio do not mean that the owner's locus should dictate venue in every case. Indeed, the locus of the refinery in Corco, as it turned out, was relatively unimportant to the *reorganization* of the refinery, as national and international oil prices and markets were far more important to the company's future than was the physical location of the refinery. Virtually all of the witnesses important to the reorganization effort (and virtually all of the company's voluminous records) were located in San Antonio. Access to San Antonio, while not so convenient as other major cities, was at least easier than was access to San Juan.

5. Strictly applying the *CORCO* factors, we come up with the following:

1. Creditors are either in El Paso, or Salt Lake City, or scattered about the country. The largest creditor, and the one with a security interest in the assets, is located in Salt Lake City.
2. The debtor is located in El Paso and Salt Lake City, given that the corporate office was moved to El Paso, along with records and files, but management and operations are located in Salt Lake City.
3. The assets are located in Utah.
4. All of the witnesses to the debtor's operations, as well as the witnesses likely to be called by the largest secured creditor, are located in Salt Lake City. The principal witness for plan purposes (other than feasibility and best interests analysis) is in El Paso, in the person of Garrett Haston.

5. The relative economic harm to the debtor in transferring the case to Salt Lake City is minimal. The debtor's owner, Mr. Haston, would suffer economic harm, however. The economic harm to the secured creditor, by contrast, would be severe, as the trustee must look to the limited assets of another bankruptcy estate just to fund his protecting that estate's interest in this estate.
6. The economics of administering the estate auger for Salt Lake City, as the court there is better familiar with the environment in which the station operates, employees are more readily available to the court for contested matters, the court there is already administering the estate in which Mr. Gladwell serves as trustee, the court is familiar with the parties, Salt Lake City is a more easily accessible city for most out-of-town creditors (including B & C), a trustee, should one need to be appointed, should be from Salt Lake City, for ease of access to the assets, and the estate's bank account can be located in the same city as the estate's operations, making monitoring by the U.S. Trustee easier (should that prove to be necessary).
7. In terms of willingness of parties to participate in the case, the only recalcitrant voice to be heard were the case transferred would be that of Mr. Haston. However, his unwillingness should not figure into the process, as any debtor that files bankruptcy has a duty to cooperate in the administration of the case, overriding any "unwillingness" the debtor or its principals might have. *See* 11 U.S.C. § 521.
8. The availability of compulsory process is not highly relevant in this case—at least not at this stage.

*See In re Commonwealth Oil Refining Co., Inc.,* *supra.*

over the case. FED.R.EVID. 201; *see, e.g., United States v. Ceballos,* 719 F.Supp. 119 (E.D.N.Y.1989) (judicial notice taken of drug dealers' use of beepers and public telephones in their trade); *Rutherford v. Sea–Land Service, Inc.,* 575 F.Supp. 1365 (D.Cal.1983) (judicial notice taken that $8 per day insufficient to obtain a room and three meals daily); *Southern Arizona York Refrigeration Co. v. Bush Mfg., Co.,* 331 F.2d 1 (9th Cir.1964) (judicial notice taken that gas does not escape from properly installed coil).

■ In bankruptcy especially, judicial notice is a jurisprudentially sound thing to do. We do not evaluate cases in splendid isolation from the outside world, nor should we. The enterprise that seeks reorganization must satisfy the court that it is a likely candidate for reorganization, that it has a fighting chance of surviving, even prospering, in the economic community in which it operates. How much more difficult it is for a judge to make such an evaluation without any personal experience with at least the general tenor of that economic community. What, for example, does a judge in Chicago, or Detroit, or Los Angeles, really know about the survivability of a restaurant on the Riverwalk in San Antonio? What do I know of the prospects of a small manufacturing enterprise in South Los Angeles? Can a judge in Pittsburgh have any real sense of the likelihood of reorganization of an oil drilling venture whose most valuable prospects are horizontal wells to be drilled in the Austin Chalk? What do I really know about the market for commercial boats operating out of Mia-mi harbor? Granted a court cannot premise its decisions just on its "gut feel" for the community (nor should it). It still requires hard evidence, in the form of testimony and the like. But that is not to say that the court's familiarity with milieu is not highly relevant, for it is. Better, then, that in evaluating a request for transfer of venue, the court take into account the extent to which a judge "on the ground" as it were might more effectively and efficiently (and perhaps even more fairly) administer the case than might a judge far removed from the debtor's operations.[6]

■ Then there is the issue of forum shopping. How much deference should be given to a forum selected primarily by the lawyers, for their own convenience or concern for remuneration? How much deference should be given to a debtor's concern that it get what it perceives to be a "debtor's judge?" Whenever a creditor raises the venue question, none at all.[7] Forum shopping has never been favored by federal courts, and courts are quick to discern the evil in all its disguises. *See, e.g., Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515, 1523 (9th Cir.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984); *Intern. Rectifyer Corp. v. American Cyanamid Co.,* 520 F.Supp. 635, 639 (D.Minn.1981); *In re Heritage Wood'N Lakes Estates, Inc.,* 73 B.R. 511, 514 (Bankr.M.D.Fla.1987). In bankruptcy, too often the tactic is masked by pious pronouncements about the debtor's "right" to select the most advantageous of several possible forums, in order to advance the prospects for reorganization.

---

**6.** This position is not inconsistent with this court's prior ruling in *In re Lazaro,* 128 B.R. 168 (Bankr.W.D.Tex.1992), in which this court elected to retain rather than dismiss a case even though the venue selected was improper. There, the principle question resolved was whether Rule 1014 *compelled* transfer or dismissal upon a finding that venue was improper. There was never any real question there about whether the judge had sufficient familiarity with the community in which the debtor lived and worked to handle the case efficiently and fairly; the issue was never raised, and in any event, Las Cruces, though in a different judicial district, is geographically close to El Paso.

**7.** If no creditor or party in interest (including the U.S. Trustee) raises the question, however, then in the usual instance, the court will not raise it *sua sponte.* Bankruptcy judges do have significant responsibility to affirmatively manage their case load, to be sure, but they are first and foremost judicial officers, not case administrators. *See Matter of Timbers of Inwood Forest Associates, Ltd.,* 808 F.2d 363, 373–74 & n. 18 (5th Cir.1987); *aff'd* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (acknowledging the changes wrought by the 1978 Code, and analogizing the judicial management duties of the bankruptcy judge to those routinely exercised by district judges pursuant to Rule 16 of the Federal Rules of Civil Procedure).

That rationale, however, should in the usual instance, be taken with several grains of salt. Too many corporations with familiar household names are operating in bankruptcy under the name of some obscure subsidiary whose venue happens to coincide with either the debtor's or the debtor's lawyers' perception of the most favorable judicial forum in which to operate.[8] This tactic is not simply unfair to the creditors of these estates. It is also unfair to the judges.

In this case, the smell of forum shopping is strong indeed. Pursued by a chapter 7 trustee with obvious limitations on his resources, and having fared badly in the Utah bankruptcy courts, the debtor settles on El Paso, Texas, where its principal, Mr. Haston has enjoyed some (though not unalloyed) success, and is at least a known quantity. Never mind that the station's employees will never be able to attend a hearing (they were not even listed in the debtor's schedules as creditors), and never mind that the court has no earthly idea what the Salt Lake City market is like. Indeed, the lawyer that filed the case for Abacus was from Salt Lake City. The attempt at forum shopping is obvious. It is also impermissible.

For all the foregoing reasons, the court here affirms its bench ruling and order that venue of this case should be transferred to the District of Utah. The clerk of the court is directed to assemble and transfer the file with all deliberate speed. Until such time as the transfer is formally accomplished, creditors and parties in interest shall continue to have access to this court in order to protect their rights.

So **ORDERED.**

---

**8.** Eastern Airlines' bankruptcy case, for example, was filed in New York, under the name of one of its subsidiaries, Ionospere Clubs. So was LTV, under the name of one of its affiliated corporations, Chateaugay.