**In re B.L. OF MIAMI, INC., a Nevada Corporation, Debtor.**

**No. 03–51366.**

United States Bankruptcy Court, D. Nevada.

June 18, 2003.

---

Gerald M. Gordon, Gregory E. Garman, Ambrish S. Sidhu, Gordon & Silver, Ltd., Las Vegas, NV, for Debtor.

Michael D. Seese, Bilzin, Sumberg, Baena, Price & Axelrod, LLP, Miami, FL, Edmond "Buddy" Miller, Sallie Armstrong, Downey Brand, LLP, Reno, NV,

for Jefferson Plaza, Ltd., d/b/a Ocean Steps, a Florida limited partnership.

## ORDER TRANSFERRING CASE

GREGG W. ZIVE, Chief Judge.

### I. PROCEDURAL HISTORY

B.L. of Miami, Inc. ("Debtor") filed its Chapter 11 petition on April 28, 2003. Following the filing of Debtor's Motion to Extend Time to File Schedules and Statements, the court reviewed the petition and pleadings, and on May 16, *sua sponte,* issued an Order to Show Cause ("OSC") why the case was properly venued in Reno, Nevada, in the unofficial northern division of the District of Nevada. The OSC hearing was held May 22, together with the five other motions. The court determined venue was proper in the District of Nevada, that Local Rule of Bankruptcy Practice 1071(b) was not applicable and held the case would not be transferred to the unofficial southern division of the District of Nevada in Las Vegas.

The question of whether the case should be transferred from Nevada to the appropriate bankruptcy court in Florida was not considered at the May 22 hearing despite the offer of creditor Jefferson Plaza, Ltd., dba Ocean Steps, a Florida limited partnership ("Jefferson Plaza"), to have its May 21 Response to Order to Show Cause Why Venue Should Not Transfer considered as a motion to transfer venue to the Southern District of Florida. Page 3, fn. 2. In its response, Jefferson Plaza asserted that, "In the event the court is inclined to transfer venue, Jefferson submits that the interests of all creditors appear to be better served if this case is transferred to the United States Bankruptcy Court for the Southern District of Florida." Page 5, ¶ 16.

Due to the lack of notice, the court declined Jefferson Plaza's offer but counsel for Jefferson Plaza said they did "not know why the case was filed here" and that they would be "happy to file" the appropriate motion. Jefferson Plaza was then given until May 27 to file a motion to transfer venue with a hearing set for June 17. See June 10 Hearing Scheduling Order.

Jefferson Plaza chose not to file a venue motion. However, a review of the petition, the original schedules, the amended schedules, statements and the pleadings filed to date, as well as the comments from counsel at the May 22 hearing, demonstrated a slim relationship with the District of Nevada. Miami, Florida, is the principal place of Debtor's only business, and there is a Florida choice-of-law provision in the lease (Page 66, ¶ 17.28) that governs the relationship between Debtor and Jefferson Plaza and which is the subject of several pending motions. There is also an improperly-removed Florida state court eviction action.

A significant majority of the creditors are located in Florida. Only seven of the approximate 133 total creditors are in Nevada: two insider wage claims, one $6,900 claim that may be an insider claim, one $20,377,000 claim by Debtor's parent, B.L. International, Inc., and three unsecured, non-priority creditors, two of whom are scheduled at less than $700 each. In addition, on May 27 Jefferson Plaza filed a Motion for Judicial Abstention and Remand, asserting that 28 U.S.C. § 1334 precluded this court from hearing the removed state court eviction proceeding and seeking to have the matter tried in the Florida state court. Therefore, an order to show cause was issued May 29 why the case should not be transferred to Florida pursuant to 28 U.S.C. § 1412, Fed. R. Bankr.P. 1014(a)(1) and 11 U.S.C. § 105.

The OSC was followed the next day by Jefferson Plaza's Emergency Motion for

Status Conference. That same day, May 30, the court conducted an emergency status hearing with counsel for the parties appearing telephonically. As a result, hearings previously set for June 17 were continued to June 20, with the hearing regarding the OSC set for June 17.

The hearing was held June 17. Appearing for Debtor was Gordon & Silver, Ltd., by Gregory E. Garman, Esq. Appearing for Jefferson Plaza was Bilzin Sumberg Baena Price & Axelrod LLP by Michael D. Seese, Esq., and Downey Brand LLP by Sallie B. Armstrong, Esq. Having read and considered all the papers and pleadings filed in this case and regarding the OSC, having heard the arguments of counsel at the May 22, May 30 and June 17 hearings, being fully advised in the premises and good cause appearing, it is therefore ordered that this case be transferred to the U.S. Bankruptcy Court for the Southern District of Florida for the reasons discussed in this Order.

## II. VENUE IN RENO IS PROPER UNDER 28 U.S.C. § 1408(1)

The court's initial inquiry is whether venue is proper in the first instance. *In re Newport Creamery, Inc.,* 265 B.R. 614, 616 (Bankr.M.D.Fla.2001). Venue of bankruptcy cases is addressed by 28 U.S.C. § 1408 which states as follows:

> Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—
>
> (1) in which the domicile, residence, principal place of business in the United

States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business in the United States, of such person were located in any other district; or (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

Since Debtor is incorporated here in Nevada, the District of Nevada may be considered Debtor's domicile and venue is thus proper under § 1408(1).

## III. THIS CASE MAY BE TRANSFERRED TO ANOTHER DISTRICT THOUGH VENUE IS PROPER

 Even where a case is originally filed in a proper venue, under § 1412 [1] and Fed. R. Bankr.P. 1014(a)(1) the case may be transferred "in the interest of justice or for the convenience of the parties." *See, e.g., In re Newport Creamery, Inc.,* 265 B.R. at 616; *In re Scott Cable Comm., Inc.,* 263 B.R. 6, 8 (Bankr.D.Conn.2001); *In re Micci,* 188 B.R. 697, 700 (S.D.Fla. 1995). Although when venue is proper debtor's choice of forum is entitled to great weight initially, *In re Enron,* 284 B.R. 376, 386 (Bankr.S.D.N.Y.2002), the decision of whether to transfer venue "is within the court's discretion based on an individualized case-by-case analysis of convenience

---

1. 28 U.S.C. § 1412 states as follows: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Although the section refers to the district court, "[t]he bankruptcy court's authority to exercise the district court's power to transfer a case under

28 U.S.C. § 1412 stems from the district court's referral of the case to the bankruptcy court pursuant to 28 U.S.C. § 157(a)." *In re Enron,* 284 B.R. 376, 386 (Bankr.S.D.N.Y. 2002). Local Rule of Bankruptcy Practice 1001(b)(2) contains the District of Nevada's referral to the bankruptcy courts.

and fairness." *Id.; see also In re Consol. Equity Prop., Inc.,* 136 B.R. 261, 266 (D.Nev.1991) (stressing that "the determination as to venue is fact-specific"). This more elastic approach is necessary because "venue does not easily submit to hard and fast rules." *In re Abacus Broad. Corp.,* 154 B.R. 682, 685 (Bankr.W.D.Tex.1993). Using this flexible standard, the court considers "whether transfer of venue will promote the efficient administration of the estate, judicial economy, timeliness and fairness." *In re Enron,* 284 B.R. at 387.

■ Under the heading of "convenience of the parties" the six factors most commonly analyzed by the bankruptcy court under § 1412 are:

1. proximity of creditors of every kind to the court;
2. proximity of the debtor;
3. proximity of witnesses necessary to the administration of the estate;
4. location of the assets;
5. economic administration of the estate; and
6. necessity for ancillary administration if liquidation should result.

*In re Consol. Equity Prop., Inc.,* 136 B.R. at 266 (citing *In re Commonwealth Oil Refining Co.,* 596 F.2d 1239, 1247 (5th Cir.1979), cert. denied, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980)) (hereinafter *"CORCO ").* Each of these factors will be discussed in Sec. V, *infra.*

## IV. THE COURT MAY RAISE THE ISSUE OF VENUE SUA SPONTE

■ Before examining these factors, the court must determine whether it has the authority to raise this issue *sua sponte.* Debtor contends this court lacks the authority to do so. However, its argument that the "party in interest" language in the rule prohibits a court from *sua sponte* raising the issue has been routinely reject-

ed. It is true that the relevant venue statute, § 1412, neither expressly requires nor prohibits the court from acting *sua sponte.* Likewise, the rule at issue, Rule 1014(a)(1), does not specifically address the issue of *sua sponte* transfer:

If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

Although 1014(a)(1) refers to a "motion of a party in interest," the rule "must be read in a manner consistent with the statutory provisions governing change of venue." *In re Henderson,* 197 B.R. 147, 154 (Bankr. N.D.Ala.1996) (rejecting Debtor's identical argument regarding an advisory committee's note addressing *sua sponte* action under the rule). Therefore, if the relevant transfer statute permits *sua sponte* transfer, the rule should be read as allowing the same unless the language of the rule clearly contradicts the language of the statute. *See id.* at 155.

The court in *Henderson* likened § 1412 to § 1404(a), the statute which allows a district court to transfer a civil case to any other district where it may have been brought "[f]or the convenience of the parties and witnesses [and] in the interest of justice ...." This is the same language used in § 1412, which is essentially the bankruptcy counterpart to § 1404(a). The *Henderson* court found that, despite four minor differences in wording between § 1412 and § 1404(a) "[t]he vast weight of authority holds the district court may transfer civil actions *sua sponte* under 28 U.S.C. § 1404," and cited a long list of cases [2] where transfer was allowed. *Id.;*

---

**2.** The court in *Henderson* cited no Ninth Circuit case in its voluminous list of cases allow-

*see also In re Wilson*, 284 B.R. 109, 110–11 [3] (allowing *sua sponte* transfer or dismissal); *In re Langston*, 291 B.R. 872, 875–76 (Bankr.N.D.Ala.2003) (applying the reasoning in *Henderson* ). Finding no conflict between Rule 1014(a)(2) and § 1412, and finding § 1412 substantially similar to 28 U.S.C. § 1404(a), the court held that a district court could transfer a case *sua sponte* under § 1412 and that "the bankruptcy court may, therefore, pursuant to § 157(a), also transfer *sua sponte* a case under 28 U.S.C. § 1412." *Id.* at 156.

The power given to a bankruptcy court to enforce its own orders under 11 U.S.C. § 105 lends support to the well-accepted proposition that a court may transfer a case *sua sponte*. Sec. 105(a) specifically states that "[n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *See, e.g., In re Wilson*, 284 B.R. at 111 (holding that § 105 allows *sua sponte* transfer under Rule 1014(a)(2)) [4]; *In re Scott Cable Comm., Inc.*, 263 B.R. at 8 (reading § 105 in conjunction with Rule 1014(a)(1) in allowing *sua sponte* transfer).

This court finds the reasoning in the cases cited above convincing. Neither Rule 1014(a)(1) nor § 1412 prohibit *sua sponte* transfer after notice and hearing.

On the contrary, the great weight of authority supports it. Therefore, considering the relevant case law, the analogous relationship between § 1404(a) and § 1412, and the equitable powers granted this court under 11 U.S.C. § 105, it is proper for the court to raise the issue of transfer *sua sponte.*

## V. THIS CASE SHOULD BE TRANSFERRED FOR THE CONVENIENCE OF THE PARTIES

■ The *CORCO* "convenience of the parties" factors all weigh in favor of transfer under § 1412 and Rule 1014(a)(1).

### A. The Proximity of Creditors of Every Kind to the Court

#### 1. The top 20 unsecured creditors

This factor must be analyzed as to both the number of creditors and the amounts of their claims. Though Debtor suggests the court should consider only "the will of Debtor's significant creditors," it is improper to consider only the large claims, because "[b]oth number and size are of equal significance in gaining acceptance of a plan and should be of equal significance in considering the convenience of the creditors." *CORCO*, 596 F.2d at 1248. Here, in terms of numbers, 13 of the 20 creditors holding the largest unsecured claims are located in the Miami area. Their claims total $740,419.26, while the seven creditors

ing *sua sponte* transfer under § 1404, but this is, in fact, the law in the Ninth Circuit as well. *See, e.g., Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir.1986).

**3.** Although both *Wilson* and *Henderson* involved cases originally filed in an improper venue and thus subject to transfer under Rule 1014(a)(2) rather than 1014(a)(1), nothing in the one-word difference in language ("improper" vs. "proper") between the two rule

subparts indicates that they should be analyzed any differently. Therefore, the rationale is equally appropriate in determining application of Rule 1014(a)(1).

**4.** The Eighth Circuit in *Wilson* also found that § 105 did not, however, dispense with the notice and hearing requirements of Rule 1014. This requirement remains and was provided in this case to all parties in interest.

outside Florida have claims totaling $106,059.19.

### 2. All unsecured non-priority claims

The schedule of unsecured non-priority creditors establishes the vast majority are Florida based. Specifically, 93 unsecured creditors with claims totaling $1,116,389.12 are in Florida, 35 unsecured creditors are located in various states and Canada with claims totaling $2,283,873.94, and Debtor lists five unsecured non-priority creditors in Nevada with claims totaling $20,427,-742,98. At first glance, it appears the dollar amount of the claims in Nevada is overwhelming, which would mitigate in favor of keeping the case here. However, the $20,427,742.98 total is somewhat misleading, because one claim alone is for $20,377,000.00 and B.L. International, Inc., the purported creditor, is Debtor's parent company. Other than the B.L. International claim, there is only $50,742.98 in claims from the other four Nevada creditors. Seventy-two percent of all creditors in this category are in Florida, which strongly weighs in favor of venue there. Cf. In re Consol. Equity Prop., Inc., 136 B.R. at 267 (finding venue in Nevada best where contacts with state were "overwhelming" because debtor, most creditors and most assets were located there).

### 3. Secured claims

There is only one secured claim listed on Schedule D, a $950,000 claim by a creditor in New Jersey. Because this creditor is neither in Nevada nor Florida, this claim is not a major factor in determining venue.

### 4. Unsecured priority claims

Three creditors are listed on Schedule E as holding unsecured priority claims. Two are Nevada employees (officers of the Debtor) with pre-petition wage claims to-taling $1,178,750.00, but the total amount of their claims entitled to priority is only $9,300.00. 11 U.S.C. § 507(a)(3)(A). The third such creditor is the Miami Dade County Tax Collector with a claim of $60,-693.70—the full amount of which is entitled to priority. This priority amount strongly outweighs the $9,300.00 priority wage claims from the two Nevada officer employees and mitigates in favor of transfer to Florida. Jefferson Plaza, a major creditor, agrees with the fact that the proximity of the creditors favors venue in Florida. See June 13 Response to OSC, page 4.

### B. Proximity of the Debtor

Although Debtor was incorporated in Nevada on September 3, 1997, and thus may technically "reside" in Nevada, its primary place of business and its assets are in Florida. The *only* employee of the Debtor located in Reno is its treasurer. Debtor's primary asset, a nightclub, is located in Florida and is the subject of extensive state court litigation. For these reasons, this factor weighs heavily in favor of transfer to Florida. Considering "proximity of the debtor" as the proximity of its principals is discussed below.

### C. Proximity of Witnesses Necessary to the Administration of the Estate

The proximity of witnesses necessary to the administration of the estate also favors venue in Florida. Debtor argues that "all" of its principals reside in Nevada. "All," however, appears to consist only of Debtor's president Mitchell Chait, who lives in Las Vegas, and Ryan Corrigan, Debtor's treasurer, who lives in Reno. The administration of Debtor's estate hinges in large part on the pending litigation in the Florida state court, which was incorrectly removed to this court and is the subject of a motion to remand and to abstain. Even if

the state court eviction proceeding had been properly removed, the lease contains a Florida choice-of-law provision[5] and would be a good candidate for abstention pursuant to either § 1334(c)(1) or (c)(2). In addition, the Stipulated Pre–Hearing Scheduling Order filed June 10 pertaining to the hearings set for June 20 regarding several pending motions demonstrate that Jefferson Plaza's witnesses are all from Florida while Debtor intends to utilize as witnesses its president, a Las Vegas lawyer and a lawyer from the firm representing Jefferson Plaza.

This analysis indicates that witnesses may be located in both Las Vegas (but not Reno) and Miami, which renders this factor neutral. In any event, physical location of witnesses is not as important a consideration as the other *CORCO* factors and, in balance, is far outweighed by all the other connections this case has to Florida rather than Nevada.

### D. Location of the Assets

As noted above, Debtor's principal asset is a nightclub, which is located at 1500 Ocean Drive, Miami Beach, Florida 33139.[6] Because Debtor's sole major asset is in Florida, venue is more proper there. It makes good sense "to locate the bankruptcy in a venue where the judge presiding would more likely have active familiarity with the community and the milieu" in which the nightclub operates. *In re Abacus Broad. Corp.*, 154 B.R. at 683. Such a judge "would be in a much better position to gauge the likelihood of an effective reorganization." *Id.*

Just as a Florida judge may well prefer to send a Nevada casino bankruptcy to Nevada even if venue were proper in Florida, this court sees strong reason to send a Chapter 11 case involving solely a Florida nightclub to Florida. This is because "[i]n bankruptcy, more than in most other kinds of federal proceedings, judges tend to draw on their experience to test the promises and platitudes floated up to the bench." *Id.* It is the judge in that community that is in the better position to judge whether the particular enterprise "is a good candidate for reorganization ... in the economic community in which it operates." *Id.; see also In re Consol. Equity Prop., Inc.*, 136 B.R. at 267 (stressing that court should consider "any local interests" when determining venue). Where a debtor's assets consist solely of real property, as with Debtor in this case, courts "have held that transfer of venue is proper because '[m]atters concerning real property have always been of local concern and traditionally are decided at the situs of the property.'" *In re Enron*, 284 B.R. at 392 [internal citations omitted].

Debtor's main asset is in Florida and a Florida judge is best equipped to oversee this reorganization. Moreover, as is evident by the pending motions regarding the lease as well as the few matters which have been the subject of unopposed orders, issues in controversy involve the interpretation and application of Florida statutes and case law which are unfamiliar to this court.

### E. Economic Administration of the Estate

This is the most important consideration, and this case is most economically administered in Florida. Debtor has just two employees located in Nevada. Any

---

5. Section 17.28 of the lease at issue states that any litigation will take place in Dade County, Florida, and will be governed by the laws of Florida.

6. In fact, other than a single bank account located in Las Vegas, *all* of Debtor's assets are located in Florida.

financial records located here are easily transmitted to Florida in today's electronic age, which is more economically efficient than having nightclub principals and employees travel to Reno on a regular basis. *See CORCO*, 596 F.2d at 1248 (finding that location of original documentation entitled to little weight in choosing between two forums).

Debtor cites a Virginia district court case, *In re Great Lakes Hotel Assoc.*, 154 B.R. 667 (E.D.Va.1992), for the proposition that because two of its main employees live in Nevada venue should remain in the District of Nevada. *Great Lakes* held that the bankruptcy court could not retain jurisdiction over a case where venue was improper, even though the "nerve center" of the debtor was located in the district where the case was filed. The place where a debtor's major business decisions are made is not necessarily a debtor's principal place of business. *Id.* at 672. Since venue was improper there was neither a need for nor an analysis of the *CORCO* factors. While there is no evidence in this case where Debtor's business decisions are made, only where two of its principals reside, Debtor's principal place of business is Florida because it is undisputed its business activity and assets are in Florida. In any event, as noted above, the location of some key witnesses is only a single consideration of many in determining venue and is not the most significant.

Both Debtor and Jefferson Plaza argue that it is more economical to keep the case in Nevada because a significant amount of time has been expended on this case. This is simply incorrect. On the contrary, this court has questioned venue from the beginning and has dealt only with relatively simple uncontested matters.[7] This case is in its very early stages.

Jefferson Plaza now takes the position that the case is more economically administered in Nevada because of lease payment issues involving § 365(d)(3). However, this lease is the central issue in the Florida state court litigation—the very matter Jefferson Plaza argues this court is required to mandatorily abstain from under § 1334(c)(2). In its motion for abstention and remand filed May 27, Jefferson Plaza further argues that there is no federal question, that there is not complete diversity and that the lease is governed entirely by Florida law. Whether tried in a bankruptcy court or state court, Florida law will be applied and it is certainly more economical and efficient to have a Florida court interpret and apply its law.

Finally, Debtor's schedules and Statement of Financial Affairs reveal only one of Debtor's five leases is with a non-Miami lessor and that, out of 10 lawsuits, only two are pending outside Dade and Broward counties in Florida. Neither the single non-Florida lease nor the two non-Florida actions are located in Nevada.

### F. Necessity for Ancillary Administration if Liquidation Should Result

This factor will be given little weight because anticipating the failure of this Chapter 11 case is not a logical basis in weighing venue. *CORCO*, 596 F.2d at 1248. This particular factor depends heavily upon undecided state court litigation, the outcome of which is pure speculation at this early stage.

7. These matters include the maintenance of a pre-petition bank account, adequate assurance to utility companies, the consensual payment of certain vendors as a result of Florida statutory requirements, and the maintenance of insurance on the property.

## VI. THIS CASE SHOULD BE TRANSFERRED IN THE INTEREST OF JUSTICE

A separate basis for the transfer of a case pursuant to Rule 1014(a)(1) is the "interest of justice" test. The analysis of the various *CORCO* factors leads the court to the conclusion that the interest of justice is best served by transfer of the case. *See In re Enron*, 284 B.R. at 386 (finding that "generally what serves the convenience of the parties will also serve the interest of justice"). When applying the "interest of justice" test, "the court applies a broad and flexible standard," considering whether transfer of venue "will promote the efficient administration of the estate, judicial economy, timeliness and fairness." *Id.*

Retaining venue in Reno, Nevada, would make it difficult and expensive for interested parties to participate in the case. Creditors would be geographically distant and if they wanted to participate would need to retain local counsel. There is little doubt that distance and cost would unfairly reduce participation in the reorganization process and that participation is a fundamental predicate of Chapter 11. *See* 11 U.S.C. § 1109(b). While Debtor argues its "nerve center" is in Nevada (but certainly not in Reno), its business activity and its trade creditors are in Miami, Florida. This case simply does not belong in Reno, Nevada, even after giving deference to Debtor's venue choice. While venue may be technically proper, retention of the case would not be in the best interest of justice. Transfer of the case will afford all parties in interest more efficient, economic and meaningful justice.

## VII. CONCLUSION

For the reasons stated above both bases found in 28 U.S.C. § 1412 and Rule 1014(a)(1) for transfer of venue have been established and IT IS HEREBY ORDERED Debtor's Chapter 11 case shall be transferred to the U.S. Bankruptcy Court for the Southern District of Florida.