**In re the NEWPORT CREAMERY INC., Debtor.**

**No. 01–11924–8W1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 14, 2001.

Domenic L. Massari, III, Tampa, FL, for Debtor.

Benjamin E. Lambers, Tampa, FL, Assistant U.S. Trustee.

Allen P. Rubine, Winograd, Shine & Zacks, P.C., Providence, RI, Bank Rhode Island c/o Rod Anderson, Holland & Knight LLP, Tampa, FL, U.S. Department of Labor, c/o Gregory A. Splagouni-as, Michael D. Felsen, Boston, MA, State of Rhode Island c/o Genevieve M. Martin, Rhode Island Dept. of Attorney General, Providence, RI, Commonwealth of Massachusetts c/o Scott A. Farr, Florida Dept. of Attorney General, Tampa, FL, State of Connecticut c/o Joan E. Pilver, Office of the Attorney General, Hartford, CT, Narragansett Electric Company and Massachusetts Electric Company c/o Mark J. Bernet, Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., c/o Goode Management, Inc. c/o Dennis J. LeVine, Dennis J. LeVine & Associates, P.A., Nationwide Life Insurance Company c/o Kevin H. Graham, Shumaker, Loop & Kendrick, LLP, Tampa, FL, Gateway Woodside, Inc. c/o Richard C. Pedone, Nixon Peabody LLP, Boston, MA, Proposed counsel for Creditors' Committee.

*Memorandum Opinion on Order Granting Motions to Transfer Venue*

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

This case came on for hearing on August 10, 2001 ("Hearing"), on motions filed by Bank Rhode Island (Doc. No. 8) and Elaine L. Chao, Secretary of Labor, United States Department of Labor (Doc. No. 13)("Movants") requesting the court to enter an order transferring venue of the case to the United States Bankruptcy Court for the District of Rhode Island ("Rhode Island Bankruptcy Court") and, with respect to the motion filed by Bank Rhode Island, seeking the alternative remedy of dismissal of this case for improper venue ("Motions").

The court also considered statements supporting the transfer of venue of this case to the Rhode Island Bankruptcy Court that were filed by the State of Rhode Island (Doc. No. 9), State of Connecticut (Doc. No. 30), Commonwealth of

Massachusetts (Doc. No. 31), 28 of the Debtor's largest creditors (Doc. No. 15A), Wynding Hill LP (a landlord creditor)(Doc. No. 37A), Martin Olsen Irrevocable Trust and Main Block Associates (landlord creditors)(Doc. No. 46A) and GRC Corporation (a vendor creditor)(Doc. No. 50B). While not before the court at the Hearing, the United States Trustee also has pending a motion to dismiss or transfer venue (Doc. No. 58) and appeared at the Hearing in support of the Motions.

For the reasons stated herein, the Motions are granted, and the Clerk of the Court is directed to effectuate transfer of this case to the Rhode Island Bankruptcy Court.[1]

### Issues

The first issue before the court is whether the Middle District of Florida is the proper venue for this case. If venue is proper in the Middle District of Florida, the court must then determine whether the court should nevertheless transfer the case to the Rhode Island Bankruptcy Court "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; Fed. R. Bankr.P. 1014(a)(1). If venue is not proper, then the court must consider whether to dismiss the case for improper venue or, if in the interest of justice or the convenience of parties, transfer the case to the Rhode Island Bankruptcy Court. Fed. R. Bankr.P. 1014(a)(2).

### Venue of Cases under Title 11

A. *Venue under 28 U.S.C. § 1408.*

■ The court's threshold inquiry is whether venue is proper in the first instance. *In re Townsend,* 84 B.R. 764, 766 (Bankr.N.D.Fla.1988). The criteria used to establish proper venue for cases under Title 11 are delineated in 28 U.S.C. § 1408 which states that a case under Title 11 may be commenced in the district in which the domicile, residence, principal place of business or principal assets are located.[2]

The business of the Debtor is the operation of a chain of family restaurants in the states of Rhode Island, Massachusetts and Connecticut. Both counsel for the Debtor and proposed counsel for the creditors' committee described the Debtor as an "icon" in the geographical location in which it operates.

The Debtor is incorporated under the laws of Rhode Island. It is not qualified to do business in the state of Florida. The petition filed in this case lists the street address of the Debtor as: 208 W. Main Road, Middleton, Rhode Island. The schedules reflect that all of its restaurant operations are located in Rhode Island, Connecticut, and Massachusetts.

The Debtor argues that its "nerve center" is located in Florida since that is where the Debtor's two principal directors live and it is in Florida that they make the strategic decisions involving the Debtor. As stated by counsel for the Debtor, "...

---

1. On August 10, 2001, this court entered a separate order granting the Motions (Doc. No. 66). This memorandum decision supplements that order by further elaborating on the bases of the court's ruling.

2. The Hearing on the Motions was noticed as "preliminary" and thus no evidence was taken other than taking judicial notice of the fact of various papers and claims having been filed in the case. The court also considered the contents of the schedules as part of the

record as admissions under Fed.R.Evid. 801(d)(2). In addition, for purposes of the record on the Motions, the court accepts as true all proffers made by the Debtor in opposition to the Motions as well as the factual statements made by Movants that were conceded by the Debtor at the Hearing. The court disregards factual statements made by Movants at the Hearing or in the Motions that were disputed by the Debtor.

the principal shareholder makes decisions in terms of voting for the officers, directors et cetera, here in Florida." On the other hand, as also stated by Debtor's counsel at the Hearing, the Debtor's "operational records on a day-to-day basis are not maintained" in Florida. They are maintained at the Debtor's place of business in Rhode Island.

■ It appears to be without dispute, therefore, that while the two shareholders may make the strategic decisions about the Debtor here in Florida, the general supervision of the operations of the Debtor is given in Rhode Island. As stated in *In re Standard Tank Cleaning Corp.*, 133 B.R. 562, 564 (Bankr.E.D.N.Y.1991), a corporation's principal place of business is the place where general supervision is given. This is "not necessarily where the manager, or controlling shareholders or directors, happen to be located or meet." *Id.* (citing to *Dock of the Bay*, 24 B.R. 811, 814 (Bankr.E.D.N.Y.1982)). In this regard, it was notable that no representative of the Debtor appeared at the Hearing because of difficulties in obtaining flight reservations to travel from the Debtor's place of business in Rhode Island to attend the Hearing that had to be rescheduled four days before the Hearing to accommodate the Debtor's counsel.

The sole basis in the papers filed with the court for a claim of proper venue in this district is referenced in the Debtor's petition. In the space provided for the Debtor to list the "Location of Principal Assets of Business Debtor," the Debtor states:

> "Principal asset in Pinellas County, FL others in Rhode Island, Connecticut and Massachusetts, in numerous cities."

In this regard, in Schedule A that requires the Debtor to list any real property owned as of the date of the petition, the Debtor has listed the following:

> "55% interest in Tarpon Highlands Development Corp., consisting of 64 developed homesites located in Pinellas County, Florida having a value of $750,000."

Debtor's counsel at the Hearing stated that the Debtor's interest in the Tarpon Highlands Development Corporation ("Tarpon") is actually a joint venture-type arrangement between the Debtor and Tarpon to develop real estate for sale as residential home sites. It was undisputed, however, that notwithstanding the listing of the Tarpon asset in "Schedule A—Real Property," title to the subject, underlying real estate is in the name of Tarpon and not the Debtor.

The only real estate titled in the name of the Debtor is located in Middleton, Rhode Island. The Debtor's schedules also reflect that its headquarters and manufacturing facility are in Rhode Island, and all of its 42 leased store locations (approximately 35 of which are currently operating) are located in Rhode Island, Connecticut, and Massachusetts.

Accordingly, it appears that the Debtor's principal assets are *not* located in this district. The Debtor's core business is operating restaurants—not development of Florida real estate. As conceded by Debtor's counsel in referring to the real estate operations of Tarpon, "the debtor is not engaged in that business."

It is also noteworthy that the schedules list the value of the equipment at the debtor's locations outside of Florida at $4,000,000, a sum far in excess of the value of the Tarpon asset of $750,000. Clearly the assets used in the Debtor's restaurant operations are its "principal" assets, rather than its 55 percent interest in a recently acquired real estate project. While the Tarpon project may well be the only asset that can generate cash rapidly for the

Debtor's operations, all of the assets used in those operations are located outside of the state of Florida.

In summary, the Debtor does not meet any of the criteria to maintain this case in this venue. Neither the domicile, residence, principal place of business, nor the principal assets of the Debtor have been located in the Middle District of Florida for any part of the 180 days preceding the filing of this case.

Therefore, the court finds that this case has been filed in an improper venue. The court must next consider whether to dismiss this case or transfer it to the Rhode Island Bankruptcy Court.

### B. *Transfer of Case under Fed. R. Bankr.P. 1014.*

Fed. R. Bankr.P. 1014 provides that if a petition is filed in an improper district, the case may be dismissed or transferred to any other district if the court determines that such transfer is in the interest of justice or for the convenience of the parties. Thus, once the court has made a determination that venue is not proper, it no longer has discretion to retain the case. The only issue left for determination is whether the case should be transferred or dismissed. *In re Townsend,* 84 B.R. at 767.

■ The standards for transfer of a case pursuant to Rule 1014(a)(2) when venue is improper are the same as when venue is proper. 28 U.S.C. § 1412; Fed. R. Bankr.P. 1014(a)(1). Both the statutory provisions dealing with change of venue of properly filed cases and improperly filed cases under Rule 1014 provide that a court may transfer a case "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; Fed. R. Bankr.P. 1014(a)(2). The courts in applying this term have historically considered the followed factors:

(1) The proximity of creditors of every kind to the Court;

(2) The proximity of the debtors to the Court;

(3) The proximity of the witnesses necessary to the administration of the estate;

(4) The location of the assets;

(5) The economic administration of the estate;

(6) The necessity for ancillary administration if bankruptcy should result.

*In re Commonwealth Oil Refining Co., Inc.,* 596 F.2d 1239 (5th Cir.1979), cert. denied, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980).

In addition, a number of courts have included as an additional consideration or factor, "a state's interest in having local controversies decided within its borders." *In re Standard Tank Cleaning Corp.,* 133 B.R. at 567 (citing *Portjeff Development,* 118 B.R. 184, 193 (Bankr.E.D.N.Y.1990); *In re Toxic Control Technologies, Inc.,* 84 B.R. 140, 143 (Bankr.N.D.Ind.1988); *McLemore v. Thomasson (In re Thomasson),* 60 B.R. 629, 632 (Bankr.M.D.Tenn. 1986); *In re Boca Raton Sanctuary Assoc.,* 105 B.R. 273, 275 (Bankr.E.D.Pa. 1989)).

### 1. *Proximity of Creditors to the Court.*

■ Bank Rhode Island is a major secured creditor holding debt obligations and guaranties in an aggregate amount of approximately $2.5 million. Its principal place of business is in Providence, Rhode Island. Bank Rhode Island's collateral includes all equipment and fixtures at six locations in Connecticut and four locations in Massachusetts.

The Debtor employs approximately 3000 employees. It is without dispute that these employees live within a reasonable

proximity of the various store locations in Rhode Island, Connecticut, and Massachusetts. Allegations have been made that the Debtor recently failed to pay medical benefits for certain of its employees that led to an investigation by the Rhode Island Attorney General's office (which appeared in support of the Motions at the Hearing). Allegations are also being investigated by the U.S. Department of Labor, which oversees enforcement of the ERISA laws, that the Debtor failed to fund its self-insured health plan established to provide health care coverage for its employees and contribute deductions withheld from their pay for 401(k) plan contributions. Without drawing any conclusions as to the merits of these allegations, it can nevertheless be reasonably inferred that a number of the Debtor's employees may hold claims against the estate.

The Debtor has disputes with many of the landlords of its approximately 42 locations. All of these locations are in Rhode Island, Connecticut, and Massachusetts. According to Debtor's counsel, ten of the locations are subject to leases between the Debtor and an insider entity that is based in Florida. However, all of the non-insider landlords are located outside of the state of Florida.

More than half of the over 600 creditors have addresses within approximately one hundred miles of the United States Bankruptcy Court for the District of Rhode Island in Providence, Rhode Island. Approximately 78 percent (or approximately 475 of the Debtor's 607 listed creditors) are located within the states of Rhode Island, Massachusetts, and Connecticut. Only five creditors are located in the state of Florida other than routine government agencies, insiders of the Debtor, and the Debtor's attorney.

Twenty-eight vendors and other creditors of the Debtor have filed a statement in support of the change of venue. These creditors' claims total $2,127,218. Adding the debt of Bank Rhode Island, the holders of claims totaling $4,527,218 support change of venue. No creditor filed any paper or appeared in support of the Debtor's choice of venue.

The United States Trustee has appointed an unsecured creditors' committee in this case. None of the creditors serving on the committee is located in Florida. The attorney who appeared at the Hearing on behalf of the committee has offices in Rhode Island.

Since the filing of this case, papers have been filed with the court in the form of notices of appearance, statements, or motions by or on behalf of 55 parties. Only one party, a law firm, listed an address in Florida.

As of the date of the Hearing, 182 creditors listing approximately $3 million of unsecured debt have filed proofs of claim. Not one of these creditors has a Florida address.

The schedules reflect that the Debtor was a party to 32 lawsuits as of the petition date. All of these lawsuits are pending in the states of Rhode Island, Connecticut, and Massachusetts.

### 2. Proximity of the Debtor to the Court.

The Newport Creamery family restaurant chain has operated in Rhode Island for more than 60 years. As discussed above, the Debtor is a Rhode Island corporation. The Debtor is not qualified to do business in Florida. It has never operated any business in Florida.

The Debtor has its headquarters at 208 West Main Road, Middletown, Rhode Island. Its manufacturing plant is also located in Middletown. The Debtor's financial records, operational records, and other

books and records are located at its main office in Middletown, Rhode Island.

### 3. Proximity of Witnesses Necessary to the Administration of the Estate.

Nearly all of the potential witnesses for the matters normally heard in a Chapter 11 are located in Rhode Island, Massachusetts, or Connecticut. This includes all of the Debtor's employees, the Debtor's accounting firm (which is located in Rhode Island), and the individuals who have inventoried the Debtor's assets.

If any of the 32 pending lawsuits in which the Debtor is a party is removed to the bankruptcy court, it can be reasonably inferred that the witnesses involved in those lawsuits will reside in the geographical areas in which those lawsuits are pending—Rhode Island, Connecticut, or Massachusetts.

Similarly, at some point, objections to claims will be filed, and the court will need to conduct hearings and take testimony on any contested objections to claims. Based on the absence of any Florida creditors among the 182 creditors that have filed claims to date and the fact that only 5 of the debtor's non-insider scheduled creditors are located in Florida, it is clear that Florida will not be a convenient forum in which to litigate claims objections.

### 4. Location of Assets.

As discussed above, all of the Debtor's assets used in its restaurant business are located in Rhode Island, Massachusetts, and Connecticut. While the Debtor does have an interest in a Florida real estate development, it is not in the business of developing real estate. It is in the business of operating an ice cream manufacturing facility in Middletown, Rhode Island that services approximately 35 operating family-style restaurants owned and operated by the Debtor in the states of Rhode Island, Massachusetts, and Connecticut.

### 5. Economic Administration of the Estate.

Chapter 11 imposes numerous additional responsibilities on a business. There may be meetings with numerous parties: (1) the office of the U.S. Trustee, (2) creditors' committee, (3) expert witnesses, (4) appraisers, and (5) individual creditors. There may be investigations and discovery conducted in connection with contested matters and adversary proceedings and possibly an examiner, as well as innumerable court hearings. There is no question that the costs of the Chapter 11 process, which at best is a substantial drain on a company's resources, will be materially increased by the lengthy travel time and inconvenience resulting from conducting the Chapter 11 case over a thousand miles away from where the Debtor operates its core business.

It is simply not economical to conduct a Chapter 11 case in an inconvenient forum such as the Middle District of Florida when the Debtor operates in Rhode Island, Connecticut, and Massachusetts.

### 6. Necessity for Ancillary Administration if Liquidation Should Result.

In the best of cases, a Chapter 7 trustee appointed following an unsuccessful attempt at reorganization of an operating business faces a daunting task. This is particularly true in cases where portions of the business are still operating at the time of the trustee's appointment. In this case, those problems would be significantly multiplied by the fact that the Debtor's business is not located in Florida while any trustee appointed from the local panel of trustees will be located in Florida.

Upon conversion, the trustee would assume immediate responsibility for securing

assets spread across three states in a jurisdiction in which the trustee will have no familiarity. In this case, decisions may have to be made very quickly as to whether, in order to preserve asset values, it will be necessary to continue to operate some of the Debtor's restaurants. There will also be immediate issues concerning employees—some of whom will need to be retained for purposes of preservation of the Debtor's books and records, as well as other corporate assets.

### 7. Interest of the States in which the Debtor Operates.

It is noteworthy in this case that each of the states in which the Debtor does business, Rhode Island, Massachusetts, and Connecticut, have all appeared and been active in urging the court to transfer venue to the Rhode Island Bankruptcy Court. As referenced above "a state's interest in having local controversies decided within its borders" is a factor which this court should consider in deciding whether it is appropriate to transfer venue. *See In re Standard Tank Cleaning Corp.*, 133 B.R. at 567.

As was apparent at the Hearing at which the states of Rhode Island, Connecticut, and Massachusetts appeared in support of the Motions, the three states in which the Debtor does business are very concerned about the impact this case will have on the Debtor's 3,000 employees, their families, and the communities in which they reside. In addition, the United States Department of Labor was one of the governmental Movants that appeared at the Hearing and supported the transfer of venue for similar reasons.

The significant concern that has been expressed by these governmental entities is that venue in Florida will impose an undue burden and expense upon these employee creditors, "some of whom will be forced to forego pursuit of their rights if they are forced to do so in Florida." Statement of Rhode Island in Support of Motion for Transfer of Venue (Doc. No. 9). This is a very legitimate interest and one that a court must respect in considering venue when the results of the case may have a significant impact in the community.

### C. The Debtor's Arguments in Favor of its Venue Choice.

In light of these overwhelming undisputed facts supporting venue in the Rhode Island Bankruptcy Court, one wonders what conceivable basis the Debtor could have had for filing this case in this District. The Debtor's position is as follows:

According to the Debtor, its ten best-producing stores, its ice cream plant, and its office building are owned by insider entities ("Insiders") and leased to the Debtor. It is the position of the Insiders that the Insiders terminated these leases prior to the filing of the case. The Insiders have "advised" the Debtor that if this case is transferred, the Insiders would not be in a position to allow the Debtor to continue to operate at these locations. As a result, the Debtor would lose those ten stores, the right to use the office building, and will not be able to obtain the ice cream it needs to continue its operations.

At the Hearing, the Debtor also proffered testimony that if the case remains in this venue, debtor-in-possession financing will be made available to the Debtor for purposes of obtaining health insurance and other employee benefits to employees and for other necessary expenses (including paying the utilities and landlords) for the Debtor's continued operations. Further, if the case remains in this district, a plan of reorganization will be immediately filed. That plan will rely on Florida funding

sources to restructure the Debtor's finances.

On the other hand, according to the Debtor's proffer of testimony, if this case is transferred, "[T]he plan doesn't get filed today, the DIP lending doesn't occur. We lose the stores. We lose the office building." As stated by counsel for the Debtor, under these circumstances, transfer of the case will be "tantamount to a death sentence to this debtor."

The court will accept, for purposes of considering the Motions, that transferring venue will indeed render the Debtor's plan for emerging from Chapter 11 not feasible in light of the stated positions of the Insiders and the debtor-in-possession financers. Unfortunately, to give effect to the Debtor's plan for reorganizing its business on this basis will also operate to disenfranchise the ability of its other creditors to meaningfully participate in this Chapter 11 case. Furthermore, it will run afoul of the other factors discussed above that a court must consider in making venue determinations.

■ To accept the Debtor's position would mean that a court would always have to accede to the demands of a particular debtor-in-possession financer that requires the case to be filed in a forum of the lender's choice even if it means that the other creditors will suffer and even if all other factors place venue in another district. While this may be the unspoken reality in many cases filed in the last dec-

ade, it certainly is not what 28 U.S.C. § 1408 and 1412, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and case law provide. It is not only contrary to what the law requires with respect to venue of Title 11 cases, it violates the spirit of the principles underlying the venue laws as well.[3]

Simply put, if this is the Debtor's "game plan" in this case, then the Debtor will have to find a "Plan B" because this court cannot ignore the plain meaning of the statute and rules, relevant case law, as well as the wishes and rights of all of the other creditors and parties in interest in favor of the wishes of the Insiders and the potential debtor-in-possession financers.[4]

The court believes that it cannot allow such considerations to override the overwhelming facts in support of every factor favoring venue of this case in the Rhode Island Bankruptcy Court. To accede to the Debtor's arguments would be to impose a substantial "burden and inconvenience on creditors and other parties in interest and to disenfranchise" the Debtor's non-insider creditors. *See* Robert B. Millner, *Is 'Incorporation Venue' A Good Thing? No,* 7–Feb. Bus. L. Today 27 (American Bar Association).

In this case, if the Debtor's numerous employees are included, there are thousands of creditors holding relatively small claims. As stated in the report of the National Bankruptcy Review Commission

---

**3.** A central purpose of the statutes governing venue is to protect "against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great Western United Corp.,* 443 U.S. 173, 184, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).

**4.** Put in its best light, the Debtor is requesting deference to its venue choice. As discussed by Bankruptcy Judge Leif M. Clark in *In re Abacus Broadcasting Corp.,* 154 B.R. 682, 686

687 (Bankr.W.D.Tex.1993) ("*Abacus*"), "In bankruptcy, too often the tactic [of filing in an improper forum] is masked by pious pronouncements about the debtor's 'right' to select the most advantageous of several possible forums, in order to advance the prospects for reorganization. That rationale, however, should in the usual instance, be taken with several grains of salt."

on venue,[5] "The small creditors with the smaller claims are the ones who are more easily disenfranchised by the choice of a remote venue." Commission Final Report at 785–86. In addition to the smaller creditors, there are numerous landlords, governmental agencies, and other interested parties who will need to actively participate in the case. *See* Lynn M. LoPucki and William C. Whitford, *Venue Choice and Forum Shopping in the Bankruptcy Reorganization of Large, Publicly Held Companies,* 1991 Wis. L. Rev. 11, 23 (1991).

As observed by Professors LoPucki and Whitford, the ability of these creditors to participate is reduced with respect to a variety of issues in which they will need to be involved, such as "lifting the automatic stay, obtaining adequate protection, determining the amounts of claims, reclaiming possession of property, or resolving a myriad of other kinds of contested matters...." *Id.* at 37.[6] The court will not disenfranchise these creditors, given the facts in this case, when the overwhelming factors point to a transfer of venue.

**5.** The National Bankruptcy Review Commission under the Bankruptcy Reform Act of 1994 submitted its report on venue issues to Congress, the president and the chief justice on Oct. 20, 1997 ("Commission Report").

**6.** In addition, as discussed by Judge Clark in *Abacus, supra* fn. 4, in Chapter 11 cases, "judges tend to draw on their experience to test the promises and platitudes floated up to the bench. The rules of evidence have long recognized the propriety of courts' drawing on common experience, as they recognize the propriety of 'taking judicial notice' of matters within the ready and common experience of the judge presiding over the case." *Abacus* at 686 citing Fed.R.Evid. 201 (other citations omitted). As aptly observed by Judge Clark, "What, for example, does a judge in Chicago, or Detroit, or Los Angeles, really know about the survivability of a restaurant on the Riverwalk in San Antonio?" *Id.* 686. In this case,

*CONCLUSION*

For these reasons, the court finds that venue is not proper in this district and that it is in the interest of justice and the convenience of the parties that rather than dismissing the case, it be transferred to the proper venue of the Rhode Island Bankruptcy Court.

The court further finds that even if venue had been proper in this district in the first instance, then it is also in the interest of justice and the convenience of parties that venue be transferred to the Rhode Island Bankruptcy Court.

In summary, it is clear that the proper venue for the filing of this case under 28 U.S.C. § 1408, 28 U.S.C. § 1412, and Fed. R. Bankr.P. 1014 is the Rhode Island Bankruptcy Court. Given these circumstances, the wishes of the Insiders and other parties furnishing the financing for the Debtor's reorganization cannot trump the rights of all of the other parties in interest.

Accordingly, by separate order entered on August 10, 2001 (Doc. No. 66), the court has directed that the Clerk immediately

the Debtor has been described as an "icon" in the state of Rhode Island. At the Hearing, counsel for the Committee referenced how he had grown up enjoying one of the Debtor's best known beverage products called an "Awful Awful." Prior to the filing of this case, this court had never heard of the Debtor and its "Awful Awful" drink and clearly has no awareness or common experience to draw upon in analyzing the various issues which will confront a court dealing with this Chapter 11 case. (Since the Hearing, the court has determined through independent research that the term "Awful Awful" is derived from the expression "Awful Big, Awful Good" as used by the Debtor in describing a "refreshing, frothy" popular drink which it has sold for many years. *The Awful Awful—A Rich Creamy History,* http://www.newportcreamery.com/awful—awful.html.)

transfer this case to the Rhode Island Bankruptcy Court.[7]

---

**7.** The court has also transferred an affiliated case, *In re Dino Pappas, Inc.*, Case No. 01–12843–8W1, to the Rhode Island Bankruptcy Court by order entered in that case on August 10, 2001.